NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| KEISHAWN BROWN, | : |
| | :     CIV. NO. 20-15672 (RMB-AMD) |
|       Plaintiff | : |
| | : |
|   v. | :                   **OPINION** |
| | : |
| SGT. N. SCHMIDT, *et al.*, | : |
| | : |
|       Defendants | : |

BUMB, DISTRICT JUDGE

Plaintiff Keishawn Brown, a prisoner incarcerated in Garden State Correctional Facility ("GSCF") in Yardville, New Jersey, filed this civil rights action *pro se* on November 5, 2020. (Compl., Dkt. No. 1.) Plaintiff has submitted an application which establishes his financial eligibility to proceed without prepayment of the filing fee under 28 U.S.C. § 1915(a) ("IFP application," Dkt. No. 1-1.)

I.   SUA SPONTE DISMISSAL

When a prisoner is permitted to proceed without prepayment of the filing fee for a civil action against a government entity or employee or based on prison conditions, 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1), and 42 U.S.C. § 1997e(c)(1) require courts to review the complaint and *sua sponte* dismiss any claims that are (1) frivolous or malicious; (2) fail to state a claim on which relief

may be granted; or (3) seek monetary relief against a defendant who is immune from such relief.

Courts must liberally construe pleadings that are filed *pro se*. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Thus, "a *pro se* complaint, however inartfully pleaded, must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Id. (internal quotation marks omitted). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556.) Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. Id.

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at

2

679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. If a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice but must permit the amendment. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

II.  DISCUSSION

    A.  The Complaint

For the purpose of screening the complaint under 28 U.S.C. §§ 1915, 1915A and 42 U.S.C. § 1997e, the Court accepts Plaintiff's allegations as true. Plaintiff asserts jurisdiction under 42 U.S.C. § 1983. On June 2, 2020, Plaintiff returned to his cell in the West Compound at GSCF, after recreation in the yard. Plaintiff's property was strewn about the cell, indicating there had been a cell search. Plaintiff learned that an officer had poured milk and shampoo in his sneakers. Defendant Sgt. N. Schmidt ("Schmidt") then moved Plaintiff's cellmate to an empty cell.

Schmidt and two other officers escorted Plaintiff to the East Compound, where they took an elevator to the third floor. Plaintiff asked why they had put milk and shampoo in his sneakers. Schmidt said Plaintiff liked fighting his officers, and he had separated Plaintiff from his roommate so an unintended target would not suffer for something meant only for Plaintiff. Plaintiff refused

3

his housing assignment for fear of his safety. A riot team arrived on the third floor to extract Plaintiff. Schmidt sprayed pepper spray in Plaintiff's face, and Plaintiff tried to block the spray from his eyes. While he was lying on the floor and handcuffed, the officers punched and kicked Plaintiff. Defendant Officer Salanitro ("Salanitro") landed multiple punches. After putting Plaintiff in a shower to wash the pepper spray off, he was placed in a suicide room.

Plaintiff was visited by a discipline hearing officer ("DHO"). He told the DHO that Schmidt was targeting him over something that happened at another facility. The DHO said everyone as GSCF knew about it. Plaintiff asked the DHO for a transfer to another facility. The DHO forwarded Plaintiff's statement to S.I.D.

Plaintiff was placed on camera-move status in the suicide room, then moved to Room 102 in the West Compound. Plaintiff requested to use the phone, but Schmidt told the tier officer that Plaintiff could not use the phone or J-Pay email. On June 6, 2020, Plaintiff had to ask another inmate to file an S.I.D. remedy for him via J-Pay. Several days later, during an S.I.D. interview, Plaintiff described the incident with the cell search and his sneakers, and the assault on him. S.I.D. told Plaintiff they were

4

working on approving a transfer. Plaintiff also complained to S.I.D. that he was prohibited from using the phone or J-Pay.

While on camera-move status, officers made Plaintiff wait seven days for a shower. After he was allowed to shower on June 16, 2020, Plaintiff protested the conditions by refusing his housing assignment. This led to another extraction of Plaintiff by officers in riot gear. Plaintiff was sprayed with pepper spray, and Schmidt and other officers punched Plaintiff while he laid on the floor. After he was brought to medical, bruised and bloody, Plaintiff was placed in a suicide room on the East Compound.

The DHO visited Plaintiff in the suicide room and took his statement about the beating, which she forwarded to S.I.D. The DHO requested that Plaintiff be transferred. For fifty days, Plaintiff was prevented from using the phone or J-Pay and was permitted to shower only once per seven days. When an East Compound supervisor learned Plaintiff was being prevented from using the phone or J-Pay, she intervened and allowed Plaintiff to use the phone and take a shower. Plaintiff remained on camera-move status at that time. From June 2 through July 19, 2020, Plaintiff was not allowed any recreational time outside his cell.

Plaintiff went on a hunger strike on July 19, 2020, to protest that he had not been transferred to another facility. The next day, LT. Long explained to Plaintiff that the rules required the

5

water to be turned off when a prisoner was on a hunger strike. Defendant Ganesh visited Plaintiff on July 21, 2020, to ask about his hunger strike. Plaintiff complained that an officer had turned off his drinking water. Ganesh told Plaintiff that happens when you go on a hunger strike. Plaintiff requested a transfer. Ganesh told Plaintiff that the Governor had locked down the prisons due to COVID and prohibited transfers.

After going a full day without water, Plaintiff complained to medical staff. Nurses gave Plaintiff water and told custody staff that Plaintiff could have drinking water during his hunger strike. They did not turn his water back on. Plaintiff spent two weeks off and on his hunger strike, until his phone and J-Pay privileges were restored. He spent a total of 80 days in his cell without recreation time.

Plaintiff alleges the following constitutional violations. Schmidt violated the Fourth Amendment by searching Plaintiff's cell in a manner intended to harass, intimidate or punish. Schmidt, Salanitro, and John Does used excessive force against Plaintiff in violation of the Eighth Amendment. Lt. Long violated the Eighth Amendment by permitting Plaintiff only one shower every seven days. Lt. Long violated the Eighth Amendment by authorizing that Plaintiff's drinking water be turned off during his hunger strike, and he violated the First Amendment by preventing Plaintiff from

6

communicating with this family and friends by phone or J-Pay for 50 days. Shimonis and Ganesh violated the Eighth Amendment by placing Plaintiff on camera-move status for 80 days without recreational time outside the cell. Shimonis and Ganesh violated Plaintiff's due process rights "regarding transfers and segregation." Plaintiff alleges that Shimonis and Ganesh subjected him to harsh conditions because he complained of conditions in the facility, which the Court construes as a First Amendment retaliation claim. For relief, Plaintiff seeks money damages and declaratory and injunctive relief. Therefore, the Court construes the claims as alleged against Defendants in their individual capacities (for damages and declaratory relief) and official capacities (for injunctive relief).

    B.    <u>Section 1983 Claims</u>

42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

To state a claim for relief under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of

the United States, and that the constitutional deprivation was caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1998); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

    1.   *Fourth Amendment Claim*

Plaintiff claims that Schmidt's search of his cell, where Schmidt filled Plaintiff's sneakers with milk and shampoo, violated the Fourth Amendment because it was intended to harass, intimidate or punish him. "[T]he Fourth Amendment has no applicability to the contents of a prisoner's cell." Humphrey v. Sec'y Pennsylvania Dep't of Corr., 712 F. App'x 122, 125 (3d Cir. 2017) (citing *Hudson v. Palmer*, 468 U.S. 517, 536 (1984) (additional citation omitted). The Court will dismiss the Fourth Amendment claim with prejudice.

    2.   *Eighth Amendment Claims*

Plaintiff's Eighth Amendment excessive force claims against Schmidt, Salanitro, and John Does may proceed. Plaintiff's Eighth Amendment claims against Lt. Long and Defendant Ganesh for turning off his water while he was on a hunger strike may also proceed. Plaintiff brings several more Eighth Amendment conditions of confinement claims. First, a claim against Lt. Long for limiting Plaintiff to one shower a week, over the course of fifty days. The

8

Eighth Amendment standard for a conditions of confinement claim requires a showing that

> the alleged deprivation is "sufficiently serious" and … the inmate has been deprived of the "minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 … (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337 … (1981)). An inmate must demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials demonstrated "deliberate indifference" to his health or safety. *Id.* However, only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement. *Hudson [v. McMillian]*, 503 U.S. [1,] 8-9 [1992]…. "Relevant considerations include the length of confinement, the amount of time prisoners must spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunities for activities outside the cells, and the repair and functioning of basic physical activities such as plumbing, ventilation and showers." *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir.1996) (citing *Tillery v. Owens*, 907 F.2d 418, 427 (3d Cir.1990)).

Dockery v. Beard, 509 F. App'x 107, 112 (3d Cir. 2013). Limiting showers to once a week for fifty days is not an extreme deprivation that denies the minimal civilized measure of life's necessities. Id. at 113 (citing Davenport v. DeRobertis, 844 F.2d 1310, 1316 (7th Cir.1988) (limiting inmates to one shower per week does not violate the Eighth Amendment)). The Eighth Amendment claim against

9

Lt. Long regarding shower restrictions will be dismissed with prejudice for failure to state a claim.

Plaintiff has also alleged that Shimonis and Ganesh violated the Eighth Amendment by denying him recreational time outside of his cell for eighty days. "[A] temporary denial of outdoor exercise with no medical effects is not a substantial deprivation." Fantone v. Herbik, 528 F. App'x 123, 127 (3d Cir. 2013) (quoting May v. Baldwin, 109 F.3d 557, 565 (9th Cir.1997)). Plaintiff has not alleged that he had no opportunity for any type of exercise or that he suffered any medical effects from the deprivation of exercise outside his cell. The Court will dismiss this claim without prejudice.

    3.    *Due Process Claims*

Plaintiff alleges Shimonis and Ganesh violated his right to due process "regarding transfers and segregation." A prisoner is deprived of a legally cognizable liberty interest when "the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Jones v. Davidson, 666 F. App'x 143, 147 (3d Cir. 2016) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). The Third Circuit has held that imposition of disciplinary segregation for as long as fifteen months does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life. Id. (citing

10

Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (holding seven months of disciplinary confinement did not implicate liberty interest); Torres v. Fauver, 292 F.3d 141, 151–52 (3d Cir. 2002) (holding disciplinary detention for fifteen days and administrative segregation for 120 days did not implicate liberty interest); Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997) (holding administrative detention for fifteen months did not implicate liberty interest)). Plaintiff has not alleged that he was deprived of a protected liberty interest by his placement on camera-move status for eighty days. Furthermore, the Due Process Clause does not create a liberty interest in a particular housing location or custody level while under the jurisdiction of correctional authorities. Green v. Williamson, 241 F. App'x 820, 822 (3d Cir. 2007) (citing Meachum v. Fano, 427 U.S. 215, 224–25 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976); Olim v. Wakinekona, 461 U.S. 238, 244–45 (1983)). The Court will dismiss Plaintiff's Due Process claims with prejudice.

    4.   *First Amendment Claims*

        a.   *Freedom of association*

Plaintiff alleges that Lt. Long violated his First Amendment right to have contact with his family and friends by denying him access to a phone and J-Pay email for fifty days while he was on camera-move status. "[F]reedom of association is among the rights

11

least compatible with incarceration." Overton v. Bazzetta, 539 U.S. 126, 131 (2003) (citing Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 125–126 (1977); Hewitt v. Helms, 459 U.S. 460 (1983)). Although prisoners retain some right to association,

> four factors are relevant in deciding whether a prison regulation affecting a constitutional right that survives incarceration withstands constitutional challenge: whether the regulation has a "'valid, rational connection'" to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmates and prison resources; and whether there are "ready alternatives" to the regulation. [Turner v. Safely], 482 U.S. [78 ] 89–91 [1987].

Id. at 132. The burden is on the prisoner to disprove the validity of a prison regulation that infringes a constitutional right. Id.

Plaintiff alleged that he was placed on camera-move status during the 50-day period where he was restricted from using the phone or J-Pay email. He has not explained the reason given to him for placing him on camera-move status or whether there is a prison regulation that restricts phone and J-Pay use while on camera-move status. If a prison regulation imposes the restriction, Plaintiff must allege why the restriction is not rationally related to a legitimate governmental interest, pursuant to the four factors discussed above. Therefore, the Court will dismiss Plaintiff's

12

First Amendment freedom of association claim against Lt. Long without prejudice.

### b. *Retaliation*

Plaintiff alleges that Shimonis and Ganesh subjected him to harsh conditions on camera-move status for eighty days because he complained of conditions in the facility. "In order to establish illegal retaliation for engaging in protected conduct," a plaintiff must allege that: "(1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor" in the adverse action. Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016). The third element of a prima facie case of retaliation can be established with evidence of: "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Id. at 424 (citations omitted). "'[T]he timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred.'" Id. (quoting Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003) (internal quotation marks omitted) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)).

13

Plaintiff has not established how the decision to place him on camera-move status was connected in time to a specific complaint that he made about the conditions of confinement, nor did he allege any other facts indicating that Shimonis and Ganesh had a retaliatory motive. Further, Plaintiff alleged he was placed in a suicide room, but he did not explain if this was related to his camera-move status. Plaintiff has not provided sufficient facts to establish a retaliation claim. Therefore, the Court will dismiss the retaliation claims against Shimonis and Ganesh without prejudice.

    C.   <u>New Jersey Tort Claims</u>

Plaintiff seeks to bring each of his claims under the New Jersey Tort Claims Act ("TCA"), N.J. Stat. Ann. 59:1-1 *et seq*. Prior to bringing a personal injury claim against public employees under the TCA, a plaintiff must file a notice of claim not later than the 90th day after accrual of the cause of action. N.J. Stat. Ann. § 59:8-8 (West). § 59:8-3 and 59:8-8. A plaintiff is "forever barred from recovering against a public entity or public employee if he "failed to file the claim with the public entity within 90 days of accrual of the claim except as otherwise provided in N.J.S. 59:8-9[.]" N.J. Stat. Ann. § 59:8-8. The claim must be filed "with (1) the Attorney General or (2) the department or agency involved in the alleged wrongful act or omission." N.J. Stat. Ann. 59:8-7.

14

"A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby." N.J. Stat. Ann. § 59:8-9.

Based on the allegations in the complaint, Plaintiff's claims accrued on August 26, 2019. Plaintiff has not alleged that he timely satisfied the notice of claim requirement of the TCA. Therefore, the Court will dismiss Plaintiff's state tort claims without prejudice. See Melber v. United States, 527 F. App'x 183, 186 n. 2 (3d Cir. 2013) (noting the New Jersey Superior Court Appellate Division has suggested the TCA claim notice requirement is jurisdictional) (citing State v. J.R.S., 939 A.2d 226, 229 (N.J. Super. Ct. App. Div. 2008)).

III. CONCLUSION

The Court will grant Plaintiff's application to proceed *in forma pauperis* under 28 U.S.C. § 1915, and proceed his Complaint in part and dismiss it in part.

DATE:   January 6, 2021

                                              s/Renée Marie Bumb
                                              **RENÉE MARIE BUMB**
                                              **United States District Judge**